## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CARTER RODOWICZ,
  *Plaintiff*,

        v.                                        No. 3:20-cv-00710 (JAM)

JEFFREY W. STEIN,
  *Defendant*.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This case is one of many related to a long-running family feud over the Rodowicz family trust. The trust's sole entity—a limited partnership—leased its property to a family-owned company that operates a nursing home. Amidst protracted litigation between the Rodowicz siblings in a series of state court and arbitration proceedings, a state court judge removed plaintiff Carter Rodowicz as a trustee and appointed a non-family member—defendant Jeffrey W. Stein—in his place.

The plaintiff brings this *pro se* and *in forma pauperis* lawsuit against Stein, accusing him of a range of misconduct as trustee in relation to the underlying litigation over the lease and sale of trust property. I previously dismissed the complaint without prejudice for failure to allege that Stein breached his fiduciary duty as trustee by engaging in any acts of self-dealing. *See Rodowicz v. Stein*, 2021 WL 3291528 (D. Conn. 2021).[1]

The plaintiff has now filed a second amended complaint that describes in greater detail his accusations against Stein's performance as trustee. But because the second amended complaint still lacks allegations to plausibly suggest that Stein breached his fiduciary duties or acted negligently, I will grant the defendants' motion to dismiss with prejudice.

---

[1] Carter Rodowicz has also brought a related lawsuit pending before this Court against a law firm related to its representation in the underlying state court proceedings in which he was removed as a trustee. *See Rodowicz v. Feldman, Perlstein & Greene, LLC*, No. 3:20-cv-00777 (JAM).

**BACKGROUND**

The following facts are derived from the allegations in the second amended complaint and attached filings of record, and they are accepted as true only for purposes of this ruling.

This case relates to a long-running dispute within the Rodowicz family. Alma Rodowicz is the mother of the plaintiff Carter Rodowicz and his siblings, Deborah Bernard, Joseph Rodowicz, Sr., and Stanley Rodowicz, Jr.[2]

In 2012, Alma Rodowicz signed a trust agreement creating the Alma Rodowicz Irrevocable Trust (the "Trust").[3] The Trust's sole source of income was rent from a nursing home owned by one faction of the family and known as Colonial Health & Rehabilitation Center of Plainfield, LLC ("Colonial").[4] Colonial rented its nursing home property from the Trust's sole entity, Village Manor Associates, Limited Partnership ("VMA").[5] The goal of this arrangement was to provide rental income to care for Alma.[6] As qualified beneficiaries of the Trust, the plaintiff and his siblings were also entitled to receive shares of the estate upon Alma's death.[7]

The Trust initially provided for the appointment of Bernard and Joseph Rodowicz, Sr. as trustees.[8] The trustees were vested with discretion to engage in various actions with respect to the Trust, such as selling Trust property, investing on behalf of the Trust, and distributing Trust property among beneficiaries.[9]

The plaintiff was later added as a trustee in 2015 via an amendment to the Trust.[10] After he became a trustee, he and Bernard removed Joseph Rodowicz, Sr. as trustee, leaving them in

---

[2] Doc. #50 at 43–44 (¶ III.B).
[3] *Id.* at 1 (¶ C.1), 61.
[4] *Id.* at 2–3 (¶¶ 5, 7), 218 (¶ 244).
[5] *Id.* at 1 (¶ C.2), 2 (¶ 5).
[6] *See Rodowicz v. Bernard*, 2019 WL 5704189, at *1 (Conn. Super. Ct. 2019).
[7] Doc. #50 at 43–44 (¶ III.B).
[8] *Id.* at 42.
[9] *Id.* at 52-55 (¶ A).
[10] *Id.* at 1 (¶ C.1).

2

full control of the Trust property and VMA.[11] The plaintiff alleges that in April 2018, "as a result

of misrepresentations, perjury, libelous acts/actions, slander, and defamation by certain

individuals," Judge Moukawsher of the Connecticut Superior Court removed him and Bernard as

trustees and appointed Stein in their stead.[12] Because these decisions by the state court are

matters of public record which have been extensively relied upon by the parties in their briefing,

I will review key parts of these proceedings.

In explaining his decision to remove the plaintiff as trustee, Judge Moukawsher

recounted how—once the plaintiff and Bernard had power as sole trustees—they "went to war

with the goose that laid the trust's golden eggs" by obstructing Colonial's attempt to "exercise a

written and unambiguous option to buy the nursing home property for $5.5 million"—funds

which could have been "used to support Alma and successor beneficiaries." *Rodowicz v.

Bernard*, 2018 WL 3015053, at *2 (Conn. Super. Ct. 2018).[13] This resulted in arbitration

proceedings in which Colonial was awarded damages.[14] Judge Moukawsher concluded that with

the plaintiff and Bernard as trustees, "the energy and resources of the trust [were] being used to

carry on the [family] feud instead of focusing on preserving its assets and protecting its primary

beneficiary," their mother Alma. *Id.* at *1.

As noted, Judge Moukawsher appointed the defendant Stein—who is not a member of the

Rodowicz family—in place of the plaintiff and Bernard as the successor trustee of the Trust and

the manager of VMA. *See Rodowicz v. Bernard*, 2019 WL 5704189 (Conn. Super. Ct. 2019);

Order Appointing Substitute Trustee, at 1 (¶ 1), *Rodowicz v. Bernard*, HHD-CV-16-6075231-S

---

[11] *Rodowicz v. Bernard*, 2018 WL 1885655, at *1 (Conn. Super. Ct. 2018).

[12] Doc. #50 at 1 (¶ C.2); Order Appointing Substitute Trustee, at 1 (¶ 1), *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. July. 13, 2018), Doc. #309.00.

[13] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

[14] Doc. #61-4 (2017 arbitration award); *see also Colonial Health & Rehab. Ctr. of Plainfield, LLC v. Vill. Manor Assocs., LP*, 2018 WL 1177492 (Conn. Super. Ct. 2018) (affirming arbitrator's award and judgment).

(Conn. Sup. Ct. July. 13, 2018), Doc. #309.00. As trustee, Stein withdrew VMA's pending

appeal from the arbitration award to Colonial and submitted to a second arbitration with Colonial

to implement the terms of the first arbitrator's decision.[15]

Judge Moukawsher approved Stein's proposal to resolve the many competing claims

brought by rival family members.[16] He explained:

> [T]he court placed its confidence in an experienced attorney and fiduciary, Jeffrey
> Stein. Charged with the task of protecting the trust and attempting to resolve the
> many disputes in which the trust has been ensnared, Stein has produced, after many
> hours of labor, a proposal to resolve the sundry claims against the trust by the parties
> and their attorneys. The court is not pleased to have to consider using trust assets
> to pay for any of the litigation that has gone before this ruling. Yet the court is
> aware that Stein has evaluated the extent which these claims may have benefited
> the trust and reduced them to his best approximation of this value—an amount the
> court believes he has also rightly set with an eye toward achieving finality as well.

*Rodowicz*, 2019 WL 5704189, at *1. The plaintiff principally alleges that Stein should not have

been appointed in his stead and that, once appointed, Stein failed to fully and fairly perform his

duties as trustee.[17]

As trustee and manager of VMA, Stein was obligated to ensure compliance with the

terms, conditions, and provisions of (1) the lease between VMA and Colonial, (2) the Trust, (3)

the Uniform Trust Code, and (4) other applicable laws and regulations.[18] Stein's fiduciary duties

included impartially protecting the interests of all beneficiaries, furnishing information to the

beneficiaries, prudently administering the Trust, taking control of the Trust property, exercising

reasonable care as it pertains to the Trust, and maintaining loyalty to the beneficiaries.[19]

---

[15] Trustee's Revised Motion for Permission to Act and Revised Proposed Order at 3–5 (¶¶ 12-15), *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. Sept. 5, 2018), Doc. #314.00; Order at 2–3, *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. Oct. 9, 2018), Doc. #314.86.; Doc. #61-5 at 3 (2019 arbitration award).

[16] Order at 2–3, *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. Oct. 9, 2018), Doc. #314.86.

[17] *See generally* Doc. #50.

[18] *Id.* at 4–5 (¶¶ 2–3).

[19] *Id.* at 4–10.

The second amended complaint alleges six counts against Stein as trustee, all of which are essentially claims for the breach of these fiduciary duties. The common theme is that Stein was partial to the faction of the Rodowicz family aligned with Colonial and that he failed to adequately assert the interests of other family members including the plaintiff. Further, the plaintiff argues that Stein failed to disclose the extent of his prior contacts with the rival faction—and thus his potential conflict or bias—to the state court that appointed him as trustee.[20] I describe each count in some detail below.

Count I alleges that Stein failed to prosecute a lawsuit against Colonial and its owners for conspiring to commit various breaches of the lease with VMA.[21] Stein explained his decision not to pursue such legal action on the grounds that those claims were not economically worth pursuing, relied on a tenuous theory of conspiracy, and may have been foreclosed by the previous arbitration award.[22] But the plaintiff insists that Stein refused to sue out of partiality toward Colonial and its managers.[23]

Count II similarly concerns Stein's failure to pursue legal action against Colonial and others on behalf of VMA. Namely, Stein withdrew both a pending VMA lawsuit against Colonial and a pending appeal from the first arbitration decision.[24] After Stein explained why he thought these actions were unlikely to succeed and therefore not worth pursuing, the state court approved the withdrawals in October 2018.[25] Yet the plaintiff alleges that Stein showed partiality to Colonial by failing to request from VMA documents to support the suit and by deciding to

---

[20] *Id*. at 3, 37.
[21] *Id*. at 11–12.
[22] *Id*. at 12–16.
[23] *Id*. at 13–14, 16.
[24] *Id*. at 17–18.
[25] *Id*. at 18–22; *see* Trustee's Revised Motion for Permission to Act and Revised Proposed Order at 3–5 (¶¶ 12-15), *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. Sept. 5, 2018), Doc. #314.00; Order at 2–3, *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. Oct. 9, 2018), Doc. #314.86.

withdraw these actions without consulting him as a past trustee and manager of VMA.[26]

Count III concerns Stein's failure to ensure an immediate closing on the sale of VMA property to Colonial by placing disputed funds in escrow, resulting in a five-month delay.[27] Stein continued to collect fees for legal services and expenses during this period.[28] Stein knew that costs to the Trust were accruing due to the delay, and the plaintiff contends that his billing over the course of the five-month delay was "unnecessary."[29]

Count IV concerns Stein's decision to arbitrate Colonial's claims for damages arising from the delayed sale of the VMA property.[30] The plaintiff disagreed with this plan and opposed Stein's position at the arbitration, instead recommending that Stein decline to participate in the arbitration, reinstate VMA's lawsuit or file a counterclaim against Colonial, and promptly sell the VMA property to Colonial.[31] Stein was aware that Colonial had breached certain duties under its lease with VMA, but he failed to communicate with the plaintiff about the decision to arbitrate and proceeded with the arbitration.[32] The plaintiff also reiterates his claim that Stein was "reckless" and "irresponsible" in withdrawing the appeal from the first arbitration award, which the plaintiff had vehemently opposed.[33]

Count V concerns Stein's payment of attorney's fees and expenses on behalf of various family members. The plaintiff argues that these fees were primarily the responsibility of each individual family member and should not have been paid out of Trust funds.[34] He told Stein in

---

[26] Doc. #50 at 19, 25–26.
[27] *Id*. at 26–27.
[28] *Id*. at 27.
[29] *Ibid*.
[30] *Id.* at 28–29.
[31] *Ibid*.
[32] *Ibid*.
[33] *Id*. at 31.
[34] *Ibid*.

October 2018 that no such payments should be made on his behalf.[35] But the state court approved these fees following Stein's recommendation, which ignored the plaintiff's objections to the services rendered and amount billed by each firm.[36]

Count VI alleges that Stein failed to abide by the terms of the Trust by operating as a single trustee rather than having a second trustee appointed, by not communicating with beneficiaries, and by failing to disclose the potential conflict of interest from his past connection to other family members and their attorney.[37] The plaintiff claims that having a different or additional trustee appointed might have resulted in a better financial outcome for the Trust.[38] The plaintiff seeks $3,843,235 in damages for the Trust and $3,247,265 in damages for himself, in addition to punitive damages, interest, and costs.[39]

Stein has moved to dismiss the second amended complaint.[40] The parties have briefed and argued the motion, and this ruling now follows.

## DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), a court must first accept as true all factual matters alleged in the complaint and draw all reasonable inferences for the plaintiff. *See Loc. Union 97, Int'l Brotherhood of Elec. Workers v. NRG Energy, Inc.*, 53 F.4th 42, 47–48 (2d Cir. 2022). Apart from any conclusory recitations, a complaint must include enough facts to state plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[35] *Ibid*.
[36] *Id.* at 31–34.
[37] *Id.* at 35–37.
[38] *Id.* at 36–37.
[39] *Id.* at 16 ($900,000 for the Trust inclusive of $250,000 for himself as to Count I); *id.* at 26 ($2,000,000 for the Trust inclusive of $500,000 for himself as to Count II); *id.* at 28 ($600,000 for the Trust inclusive of $100,000 for himself as to Count III); *id.* at 31 ($1,500,000 for the trust inclusive of $375,000 for himself as to Count IV); *id.* at 35 ($90,500 for the Trust inclusive of $22,265 for himself as to Count V); *id.* at 37 ($2,000,000 for himself as to Count VI); *id.* at 40 (interest and costs).
[40] Doc. #60.

(2009). Although this plausibility requirement is not a probability requirement, it does demand "more than a sheer possibility that a defendant has acted unlawfully." *Ibid.* The Court may also consider any documents attached as exhibits to, incorporated by reference in, or integral to the complaint, *see Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018), as well as certain public documents of which it can take judicial notice, *see Barlow v. Nationstar Mortg. LLC*, 2022 WL 950949, at *1 (2d Cir. 2022).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Rooker-Feldman, res judicata, *and collateral estoppel*

The *Rooker-Feldman* doctrine bars federal district courts from hearing "cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of N.Y.*, 910 F.3d 639, 644 (2d Cir. 2018). It recognizes that Congress has conferred federal "appellate jurisdiction to reverse or modify a state-court judgment … exclusively in [the United States Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

For the *Rooker-Feldman* doctrine to bar a plaintiff's claim, "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Sung Cho*, 910 F.3d at 645.

Although "all four requirements must be met in order for *Rooker-Feldman* to act as a jurisdictional bar … the second requirement – that the plaintiff complains of an injury caused by

a state-court judgment – is the core requirement from which the other *Rooker-Feldman*

requirements derive." *Dorce v. City of N.Y.*, 2 F.4th 82, 101–02 (2d Cir. 2021). "[A] federal suit

complains of injury from a state-court judgment, even if it appears to complain only of a third

party's actions, when the third party's actions are produced by a state-court judgment and not

simply ratified, acquiesced in, or left unpunished by it." *Hoblock v. Albany Cnty. Bd. of*

*Elections*, 422 F.3d 77, 88 (2d Cir. 2005). "The fact that the state court chose not to remedy the

injury does not transform the subsequent federal suit on the same matter into an appeal,

forbidden by *Rooker–Feldman*, of the state-court judgment." *Ibid.*

Stein argues that the decisions in the following Connecticut Superior Court cases bar all

of the plaintiff's claims under *Rooker-Feldman*: *Rodowicz v. Bernard*, No. HHD-CV-16-

6075229-S, *Colonial Health & Rehab. Ctr. of Plainfield, LLC v. Vill. Manor Assocs., LP*, No.

WWM-CV-17-6011990-S, *Rodowicz v. Bernard*, No. HHD-CV-16-6075232-S, and *Rodowicz v.*

*Bernard*, No. HHD-CV-16-6075231-S.[41]

Stein is correct that these state court cases concerned the same long-running feud that is

the subject of the present litigation. But even assuming that Stein satisfies *Rooker-Feldman*'s

first and fourth requirements, Stein does not satisfy "*Rooker-Feldman*'s 'core' substantive

requirement: [that] the injuries of which plaintiffs complain [were] *produced* by the state-court

judgments at question [rather than] merely *ratified* by such judgments." *Sung Cho*, 910 F.3d at

646. In particular, I do not see how the state court judgments produced any of the plaintiff's

purported injuries. The complaint consists of allegations about Stein's actions as trustee, and

neither the plaintiff nor Stein alleges that a state court required Stein to take any of these actions.

To be sure, the state court later approved some of the challenged actions, such as Stein's

---

[41] *See* Doc. #61 at 6 n.5, 19, 20 n.10.

withdrawal of the lawsuit against Colonial and his request to award attorney's fees on behalf of the Trust. But "*Rooker-Feldman* does not bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them." *Dorce*, 2 F.4th at 104.

For example, in *Sung Cho v. City of New York*, plaintiffs sued New York City for allegedly forcing them into unconstitutional settlement agreements. "[A]fter the plaintiffs signed their settlement agreements, each of the agreements was 'so-ordered' by justices of the Bronx and New York County Supreme Courts," who subsequently dismissed the underlying actions. 910 F.3d at 643. The Second Circuit vacated the district court's dismissal under *Rooker-Feldman*, reasoning that the state court judgments did not produce the complained-of injuries. *Id*. at 649. Instead, the defendants' conduct leading up to the state court judgment produced the injuries. *Id*. at 646–47.

Similarly, the plaintiffs in *Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 75 (2d Cir. 2015), alleged that the defendants operated a "default judgment mill" to obtain state court judgments unlawfully. The Second Circuit held that *Rooker-Feldman* did not apply, "primarily because plaintiffs brought claims under the [Fair Debt Collection Practices Act], [Racketeer Influenced and Corrupt Organizations Act], and state law, which … 'speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments.'" *Sung Cho*, 910 F.3d at 647 (quoting *Sykes*, 780 F.3d at 94–95).

Finally, in *Dorce v. City of New York*, the Second Circuit allowed a claim to proceed notwithstanding *Rooker-Feldman* because "Plaintiffs do not seek to void th[e] state court foreclosure judgment; rather, they seek compensation only for the excess value of their property above the taxes and fees that they owed, not the return of their property or the full value of their

10

property." 2 F.4th at 105; *accord Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021) (refusing to apply *Rooker-Feldman* because the plaintiff "is simply looking to recover damages related to an allegedly improper execution and levy," which "is a separate inquiry from whether the judgment itself is valid").

Like the plaintiffs in *Sung Cho* and *Sykes*, the plaintiff here alleges that Stein breached his duties as trustee and that some of the alleged misconduct occurred in the course of litigation. And like the plaintiffs in *Dorce*, the plaintiff here does not seek to void the state judgments; instead, he seeks damages directly from Stein. That the state court approved some of Stein's actions as trustee is therefore not enough for *Rooker-Feldman* to bar the plaintiff's claims.

Finally, Stein asserts that "[a]ll of the issues that the Plaintiff seeks to air by his filing of the instant action in federal court are related to the state court proceedings which have already been decided in a manner adverse to the Plaintiff."[42] But "the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims…, but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007). I will therefore decline to dismiss the plaintiff's claims against Stein under *Rooker-Feldman*.

That said, *Rooker-Feldman* is different from either claim preclusion (also known as *res judicata*) or issue preclusion (also known as collateral estoppel). The plaintiff's claims may be barred by either doctrine even if they are not barred by *Rooker-Feldman*. *See, e.g.*, *KIPP Acad. Charter Sch. v. United Fed'n of Tchrs.*, 723 F. App'x 26, 29 (2d Cir. 2018).

Stein did not argue for dismissal on *res judicata* grounds in his motion to dismiss.

---

[42] *Id.* at 19.

Instead, he raised it in his reply.[43] But "[a]rguments may not be made for the first time in a reply brief." *Cadoret v. Sikorsky Aircraft Corp.*, 323 F. Supp. 3d 319, 326 n.7 (D. Conn. 2018) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). Instead, "[a] reply memorandum must be strictly confined to a discussion of matters raised by … the memorandum to which it replies." D. Conn. L. Civ. R. 7(d). Stein has therefore waived for now his *res judicata* argument. *See, e.g.*, *Corpes v. Walsh Constr. Co.*, 130 F. Supp. 3d 638, 644 (D. Conn. 2015).

Stein also argues that the doctrine of collateral estoppel bars the plaintiff's claims. Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to a prior judgment." *Cayuga Nation v. Tanner*, 6 F.4th 361, 374 (2d Cir. 2021). "To determine the preclusive impact of a state court judgment, a federal court is 'required to apply the preclusion law of the rendering state.'" *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 383 (D. Conn. 2018) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000)).

"Under Connecticut law, an issue is precluded when it was 'actually litigated and necessarily determined in a prior action between the same parties upon a different claim.'" *Watley v. Dep't of Child. & Fams.*, 991 F.3d 418, 425 (2d Cir. 2021) (quoting *Lyon v. Jones*, 291 Conn. 384, 406 (2009)). "'The prior litigation must have resolved the same legal or factual issue that is present in the second litigation.'" *Ibid*. (quoting *Corcoran v. Dep't of Soc. Servs.*, 271 Conn. 679, 690 (2004)).

"The party asserting issue preclusion bears the burden of proving with clarity the issue determined by the prior judgment." *Ibid*. "The linchpin of collateral estoppel is the identity of the issues decided by both tribunals." *Ibid* (quoting *Corcoran*, 271 Conn. at 691). "An issue is

---

[43] Doc. #70 at 2–3.

necessarily determined if a 'judgment could not have been validly rendered' in the 'absence of a determination of the issue.'" *Ibid.* (quoting *Lyon*, 291 Conn. at 406)).

Stein does not point to any state court issues that are identical to the issues before the Court. Instead, he states that the issues are merely "related."[44] Nor does he explain how the state court necessarily determined any of the issues in the present litigation, such as Stein's alleged breaches of his trustee duties. Because Stein has not carried his burden to show that collateral estoppel bars the plaintiff's claims, I decline to grant relief on this basis.

### *Breach of fiduciary duty*

Although the plaintiff frames his second amended complaint to include six different counts, each one of the counts is effectively a claim against Stein for breach of his fiduciary duty as trustee. "When a federal district court sits in diversity, it generally applies the law of the state in which it sits, including that state's choice of law rules." *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). Because the Trust Agreement was signed and notarized in Connecticut and because a Connecticut state court removed the plaintiff as trustee and appointed Stein as the new trustee, I will apply Connecticut law.[45]

Under Connecticut law, "the imposition of a fiduciary duty counterbalances opportunities for self-dealing that may arise from one party's easy access to, or heightened influence regarding, another party's moneys, property, or other valuable resources." *Essex Ins. Co. v. William Kramer & Assocs., LLC*, 331 Conn. 493, 509 (2019). Thus, the Connecticut Supreme

---

[44] Doc. #61 at 19.

[45] The defendants do not dispute that the plaintiff has standing as a contingent beneficiary of the Trust. "Connecticut courts have relied on the Restatement (Third) of Trusts to find that contingent or discretionary beneficiaries of a trust have standing to sue a trustee." *Rondina v. Feigenbaum*, 2021 WL 243082, at *4 (D. Conn. 2021) (citing cases). And the second amended complaint explicitly seeks damages for the Trust. *See, e.g.*, Doc. #50 at 16, 26, 28, 31, 35, 39. *See Christian v. Christian*, 2016 WL 823010, at *5 (Conn. Super. Ct. 2016) (a beneficiary's standing "is limited … to recovering assets for the benefit of the trust, and does not support a recovery of assets for the plaintiff's own benefit to the exclusion of the trust.").

Court has acknowledged that "although we have not *expressly* limited the application of these traditional principles of fiduciary duty to cases involving only fraud, self-dealing or conflict of interest, the cases in which we have invoked them have involved such deviations." *Sherwood v. Danbury Hosp.*, 278 Conn. 163, 196 (2006). And the Appellate Court in turn has ruled that an essential element of a claim for breach of fiduciary duty is "that the defendant advanced his or her own interests to the detriment of the plaintiff." *Dressler v. Riccio*, 205 Conn. App. 533, 546 (2021) (quoting *Chioffi v. Martin*, 181 Conn. App. 111, 138 (2018)).

The plaintiff has failed to sufficiently plead this element of a breach of fiduciary duty claim. Namely, he has not alleged that Stein advanced his own interests to the detriment of the plaintiff or other beneficiaries. Despite the fact that I flagged this issue when I dismissed the original complaint, the plaintiff has not alleged any new facts that plausibly show that Stein advanced his own interests at the expense of the Trust.

With respect to Counts I and II, the second amended complaint does not allege that the reason Stein failed to pursue claims on behalf of VMA and against Colonial was to advance his own interests. The most that the plaintiff alleges is that Stein acted to "protect Colonial and beneficiaries" and that Stein had some prior relationship with those family members.[46] But the plaintiff does not allege that Stein received or intended to receive any benefit for withdrawing VMA's lawsuit and arbitration appeal.

Nor does the plaintiff allege that Stein at any time represented the interests of Colonial or other family members so as to give rise to a conflict of interest. Moreover, the second amended complaint identifies a number of prudential reasons cited by Stein for resisting litigiousness, including relieving the Trust of further conflict and expense.[47]

---

[46] Doc. #50 at 3, 12.
[47] *See, e.g., id*. at 12–14.

With respect to Count III, although the second amended complaint alleges that Stein collected unnecessary fees during a period of alleged delay in the sale of VMA property, it does not allege that the reason for Stein's delay of the sale was to collect these fees or that anything other than the delay itself made Stein's collection of fees during this period improper. A "mere allegation of negligent conduct for self-enrichment through legal fees is inadequate," because "[o]therwise, every malpractice case ever brought could include a breach of fiduciary duty claim arising out of a lawyer's recognized financial interest in getting paid for his work." *Kalra v. Adler Pollock & Sheehan P.C.*, 2019 WL 319397, at *4 n.1 (D. Conn. 2019).

With respect to Counts IV and V, the second amended complaint alleges that Stein failed to ensure that his "acts and actions were in the TRUST beneficiaries' best interest and not in his best interest or the best interests of another party."[48] But this is conclusory and does not allege any actual facts to suggest Stein advanced his own interests to the detriment of the Trust or its beneficiaries.

The same is true of Count VI. There is simply nothing in the second amended complaint indicating that Stein's failure to ensure the appointment of a second successor trustee was meant to, or did in fact, benefit Stein in any way.

In sum, the second amended complaint fails to present any actual, non-conclusory allegations that Stein acted to advance his own interests to the detriment of the Trust. It does not allege facts to suggest fraud, self-dealing, or a personal conflict of interest that would suggest that Stein acted for reasons of personal benefit at the expense of the Trust. As such, the plaintiff has failed to state a claim for breach of fiduciary duty upon which relief can be granted.

---

[48] *Id*. at 30, 34–35.

*Negligence*

Beyond alleging a claim for breach of fiduciary duty, the second amended complaint may be interpreted to allege that Stein was negligent in his duties as trustee. Under Connecticut law, a beneficiary may maintain an action against a trustee for negligence. *See, e.g.*, *U.S. Tr. Co. v. Bohart*, 197 Conn. 34, 49 (1985); *D'Addario v. Bergman*, 1997 WL 754496, at *3 n.5 (Conn. Super. Ct. 1997). But Connecticut statutory law provides that trustees have the power "[t]o compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against the estate or trust *as the fiduciary shall deem advisable*, and the fiduciary's decision *shall be conclusive* between the fiduciary and the beneficiaries of the estate or trust in the absence of fraud, bad faith or gross negligence of the fiduciary." Conn. Gen. Stat. § 45a-234(18) (emphasis added); *Caton v. Fischel*, 2016 WL 3027014, at *3 (Conn. Super. Ct. 2016) (Dooley, J.). Moreover, because a trustee has broad discretion with respect to the administration of a trust, a claim for negligence must establish that the trustee engaged in no less than an abuse of discretion. *See Dwight v. JP Morgan Chase Bank*, 2005 WL 756517, at *5 (D. Conn. 2005).

Indeed, the powers that the Trust agreement itself vested in Stein as trustee were expressly "exercisable in [his] discretion."[49] And "[w]hen a trustee has been vested with such discretion, liability attaches only if the discretion is abused." *U.S. Tr. Co.*, 197 Conn. at 48 (citing, *inter alia*, *Conway v. Emeny*, 139 Conn. 612, 619 (1953)).

To the extent the plaintiff argues that Stein abused his discretion with respect to any of the challenged acts, he alleges no facts to this effect apart from the already-disposed-of

---

[49] *Id.* at 52 (¶ A); Order Appointing Substitute Trustee, at 1 (¶ 1), *Rodowicz v. Bernard*, HHD-CV-16-6075231-S (Conn. Sup. Ct. July. 13, 2018), Doc. #309.00 ("Subject to any limitation in this order Stein will have all the powers the prior trustees enjoyed under the trust terms and the law of trusts.").

allegations of fraud, self-dealing, and conflict of interest. Nor does he allege facts to plausibly suggest that Stein committed gross negligence.

Even if some of Stein's discretionary judgments about whether to take part in litigation turned out in hindsight not to be in the best interests of the Trust, a "mere error in judgment" does not establish that a trustee has acted with negligence. *U.S. Tr. Co.*, 197 Conn. at 49. The same holds true for Stein's alleged failure to ensure an immediate closing on the sale of VMA property to Colonial by placing disputed funds in escrow and for Stein's discretionary decision to pay attorney's fees (which the state court approved). And the plaintiff points to no law or duty that obliged Stein to seek out someone else to serve as a co-trustee after Judge Moukawsher saw fit to appoint only Stein as sole trustee. In light of Stein's broad discretion as trustee, the amended complaint fails to state a plausible negligence claim against Stein.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motion to dismiss (Doc. #60). Because the Court has previously allowed the plaintiff an opportunity to file an amended complaint against Stein, the Court concludes that any further amendment would be futile and therefore dismisses the complaint against Stein with prejudice.

The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 13th day of February 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge